**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3428-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WARREN JENKINS,

    Defendant-Appellant.

_____

Submitted October 17, 2024 – Decided November 18, 2024

Before Judges Currier and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 95-08-2755.

Warren Jenkins, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Boris Moczula, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant, Warren Jenkins, appeals from a May 25, 2023 order denying his motion to correct an illegal sentence. We affirm.

I.

We distill the following pertinent facts and procedural history from our decision on direct appeal, State v. Jenkins, 349 N.J. Super. 464 (App. Div. 2002), and the record.

Tried by jury, defendant was convicted and sentenced in 1998 for offenses arising from the shooting death of John Deventer and the separate carjacking of Rose Weinbaum, crimes we appropriately described as part of defendant's "crime spree in Newark and the surrounding area in spring and summer of 1995." Id. at 468.[1]  Specifically, Deventer, a retired police chief, was shot and killed one morning when he attempted to resist and prevent the carjacking of his elderly neighbors, the Wolfs, as he drove them around for their daily errands including a stop to the local cemetery.  While Deventer was out of the vehicle to speak with a working gardener at the cemetery, two assailants entered the vehicle and forced the eighty-year-old Wolfs from the vehicle holding a gun to Mr. Wolf's head.  As we previously summarized,

> [t]he two assailants then approached Deventer and the gardener who, by then, were returning to the car.  The two demanded the keys to the car and Deventer resisted.  A struggle ensued and Deventer shouted, "I am a cop."

---

[1]  Defendant was previously convicted for additional offenses occurring during that time frame, which we also affirmed.  State v. Jenkins, 321 N.J. Super. 124 (App. Div. 1999).

> One of the attackers told the man with the gun, "Shoot him" and the other immediately complied, shooting Deventer in the abdomen. Deventer collapsed and the two assailants stole the car keys, ran back to the Town Car and drove off. Mr. Wolf sent his wife to summon help; Deventer died in his arms.
>
> [Id. at 469.]

Later that same day, Rose Weinbaum, her elderly father, and her two-year-old child were carjacked at gunpoint, and her father was knocked to the ground as he attempted to resist. Id. at 470. Investigation tied defendant to both offenses, and defendant was charged and tried for murder, carjacking, and related offenses arising from these attacks.

The jury convicted defendant of aggravated manslaughter as a lesser-included offense of murder, N.J.S.A. 2C:11-4; felony murder, N.J.S.A. 2C:11-3(a)(3) (Graves Act, N.J.S.A. 2C:43-6(c)); two counts of carjacking, N.J.S.A. 2C:15-2; robbery, N.J.S.A. 2C:15-1; two counts of conspiracy, N.J.S.A. 2C:5-2; aggravated assault, N.J.S.A. 2C:12-1(b)(4) (Graves Act, N.J.S.A. 2C:43-6(c)); two counts of possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a); two counts of unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); and one count of receiving stolen property, N.J.S.A. 2C:20-7.

At sentencing, the court found the aggravating factors substantially outweighed the non-existent mitigating factors. The court first recognized

defendant's background at the age of thirty-three and his "substantial criminal history, including five prior indictable convictions," noting those for which the court recently imposed a prison term of fifty-eight years with twenty-nine years' parole ineligibility. The court described the gravity of the offenses and the harm caused to multiple victims explaining, "[i]t is difficult, indeed impossible, to describe accurately the physical and emotional suffering and loss which you have caused to so many. Yet you demonstrate no remorse. Worse yet, you have preyed upon the innocent, the weak[,] and the aged."

Specifically, the court evaluated the sentencing factors and found:

> Frankly, I can't find any mitigating factors to apply to your sentencing here. What I find particularly disturbing is the fact that . . . you knew or reasonably should have known that the victim of the offense here was . . . particularly vulnerable or incapable of resistance through age, ill health, in one case their youth, [and] their presence at the cemetery, a place of[] hopeful[] tranquility[,] not a place of violence. [There's] [t]he risk that you'll commit another offense and the reality that this episode evidenced a continuing and escalating spiral of violence which culminated in this murder. I've considered the extent of your prior criminal record and the seriousness of the offenses . . . . There's a need to deter and I'm clearly convinced, based upon all those factors, the aggravating factors substantially outweigh any mitigating factors.

In determining whether to impose sentences consecutively or concurrently, the court evaluated the facts and circumstances pertinent to the offenses under State v. Yarbough, 100 N.J. 627 (1985). The court expressly recognized that "for purposes of excessive sentence review it is the total aggregate sentence which must be looked at and not merely the justification for each count." The court further cited to State v. Candelaria, 311 N.J. Super. 437 (App. Div. 1998), then recently decided, acknowledging that despite there being no outer limit to consecutive sentencing, "the principle that offenders must be safeguarded from excessive, disproportionate[,] or arbitrary punishment still applies."

The court explained it had

> considered the crimes, the fact that the crimes and the objectives were predominantly dependent on each other, particularly as it applies to the carjacking of [Mrs.] Weinbaum and the incident at the cemetery. Those crimes involve[d] separate acts of violence. They were committed at different times and separate places. They involve[d] multiple victims. We're talking about numerous victims.

Specifically addressing defendant, the court elaborated:

> [Y]ou chose your victims to be weak and vulnerable. You carjacked the Wolfs, an elderly couple, a couple enjoying the last years of [their] life, in part by paying respect to those who had passed before them . . . . You shot and killed John De[v]enter, an unarmed[,] retired

5

police officer, [and] a good Samaritan who was merely trying to help his friends. And then you carjacked Mrs. Weinbaum who was simply taking her elderly father to the doctor [while] accompanied by a child.

The court expressed its understanding that the sentence "must be limited to that which the law authorizes," must be "free . . . of improper emotions and motivations," and may not be "impose[d] for the mere purpose of vengeance or merely to satisfy public demand for vengeance." Referencing defendant's prior convictions, the court found the nature of defendant's separate and distinct new offenses demonstrated the risk of reoffending, the danger he posed to the public, and the need to deter defendant and others, necessitating lengthy imprisonment.

Applying these principles, and after imposing a discretionary extended term of imprisonment, N.J.S.A. 2C:44-3(d), the court sentenced defendant to life in prison for felony murder, with thirty-five-years' parole ineligibility and thirty-years' imprisonment with fifteen-years' parole ineligibility for each carjacking to run concurrently with each other, but consecutively to the felony murder term. The court sentenced defendant concurrently on the remaining counts for an aggregate sentence of life in prison, with a fifty-year period of parole ineligibility.

On direct appeal, we affirmed the sentence, rejecting defendant's claim the sentence was "manifestly excessive in that the [sentencing judge] imposed both maximum and consecutive sentences." Jenkins, 349 N.J. Super. at 480.

## II.

Twenty-five years after sentencing, defendant filed a motion to correct an illegal sentence under Rule 3:21-10(b)(5). Defendant argued the sentencing court illegally imposed consecutive sentences in violation of Yarbough, 100 N.J. at 627, and failed to make an explicit fairness statement under State v. Torres, 246 N.J. 246 (2021). The motion court first determined that Torres did not espouse a new rule of law, but instead "merely emphasized what has always been required under the [Criminal] Code and Yarbough: that judges must explicitly assess fairness when imposing consecutive sentences." The court then denied defendant's claims, finding "there is no basis on which the requested relief can be granted" because "the sentence . . . is not an illegal sentence" under the law.

## III.

Defendant raises the following arguments on appeal:

POINT I

THE TRIAL COURT ERRED IN FAILING TO GRANT [DEFENDANT]'S CLAIM THAT THE

7

SENTENCING COURT FAILED TO MAKE AN EXPLICIT STATEMENT CONSIDERING THE OVERALL FAIRNESS OF THE CONSECUTIVE SENTENCES BEING IMPOSED AS REQUIRED BY STATE V. YARBOUGH, 100 N.J. 627 (1985), AND STATE V. TORRES, 246 N.J. 246 (2021), AND N.J.S.A. 2C:1-2 IN VIOLATION OF THE [DEFENDANT]'S 8TH AND 14TH AMENDMENT RIGHTS.

POINT II

THE NEW JERSEY SUPREME COURT'S DECISION IN STATE V. TORRES, 246 N.J. 246 (2021) SPECIFICALLY APPLIES TO THE [DEFENDANT] BECAUSE TORRES "REPRESENTS AN ENUNCIATION OF THE STATUTORY LANGUAGE PRESENT SINCE THE STATUTE'S ENACTMENT IN 1978", AND THE COURT'S REQUIREMENT TO CONDUCT AN OVERALL FAIRNESS ASSESSMENT "IS SIMPLY THE RULE THAT HAS, OR SHOULD HAVE, ALWAYS BEEN APPLIED." STATE V. BULL, 227 N.J. 555 (2017) . . . .

Here, defendant again seeks review of his consecutive sentences and retroactive application of Torres, 246 N.J. at 246. The State counters that the motion court correctly determined defendant's challenges are not cognizable under Rule 3:21-10(b)(5) as challenges to consecutive sentences do not implicate the legality of a sentence, and Torres nevertheless simply affirms the fairness requirement established by "long-standing caselaw."

IV.

We have considered defendant's arguments and determine they lack sufficient merit to warrant extended discussion in a written opinion.  See R. 2:11-3(e)(2).  We briefly summarize our reasons for denying relief.

Rule 3:21-10(b)(5) provides that "[a] motion may be filed and an order may be entered at any time . . . correcting a sentence not authorized by law including the Code of Criminal Justice."  Claims asserting the illegality of a sentence are reviewed de novo, see State v. Nance, 228 N.J. 378, 393 (2017), as are questions of law regarding whether claims are procedurally barred, see State v. Robinson, 217 N.J. 594, 603-04 (2014).

Our Criminal Code does not define what constitutes an "illegal sentence," but our courts recognize "two categories of illegal sentences:  those that exceed the penalties authorized for a particular offense, and those that are not authorized by law."  State v. Hyland, 238 N.J. 135, 145 (2019).  These categories "have been 'defined narrowly.'"  Ibid. (quoting State v. Murray, 162 N.J. 240, 246 (2000)).  A "defendant's contentions regarding consecutive sentences or the absence of reasons for imposition of the consecutive sentences do not relate to the issue of sentence 'legality' and are not cognizable on [post-conviction relief

(PCR)], or under the present Rule 3:21-10(b)(5)." State v. Acevedo, 205 N.J. 40, 47 (2011); see also Hyland, 238 N.J. at 145-46 (stating a sentence "is not illegal if the sentencing judge fails to state the reasons for imposition of a sentence . . . but otherwise imposes an authorized sentence").

Applying these principles, we concur that these claims are not cognizable under Rule 3:21-10(b)(5) as the sentence is not illegal. Here, defendant's arguments regarding the sentencing court's imposition of consecutive sentences for the felony murder and carjacking offenses fall outside Rule 3:21-10(b)(5)'s limited scope. See State v. Flores, 228 N.J. Super. 586, 596 (App. Div. 1988) ("perceiv[ing] no need to make [PCR] an open sesame for the wholesale review of sentences"). The imposed terms did not exceed their permissible statutory ranges.

In addition, defendant's challenge to his sentence as "grossly excessive" due to the imposing of "both maximum and consecutive sentences" was previously considered and denied on direct appeal. We need not address the consecutive nature of this sentence again, see State v. Njango, 247 N.J. 533, 544 (2021), but were we to do so, we are again satisfied the court's imposition of consecutive sentences was aligned with the core principles of fairness and uniformity set forth in the Criminal Code and safeguarded by Yarbough and

10

applicable caselaw. We discern no illegality as the consecutive sentences and aggregate term were anchored in both the law and the record.

We do not construe Torres as creating a new rule of law requiring retroactive application or impacting the legality of defendant's sentence. See State v. Feal, 194 N.J. 293, 308-09 (2008); see also State v. Burstein, 85 N.J. 394, 403 (1981) (stating "retroactivity can arise only where there has been a departure from existing law"). Instead, the Supreme Court in Torres reviewed fundamental sentencing principles and "reiterate[d] the repeated instruction that a sentencing court's decision whether to impose consecutive sentences should retain focus on 'the fairness of the overall sentence.'" Torres, 246 N.J. at 270 (quoting State v. Miller, 108 N.J. 112, 121 (1987)). Here, we are nevertheless satisfied the sentencing court painstakingly fashioned defendant's sentence guided by the very sentencing principles amplified by the Torres Court.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3428-22