NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1887-15T4

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

WILLIAM F. ROSADO, a/k/a
WILLIAM M. ROSADO,

 Defendant-Appellant.
__________________________________

 Submitted May 10, 2017 – Decided June 8, 2017

 Before Judges Alvarez and Manahan.

 On appeal from Superior Court of New Jersey,
 Law Division, Union County, Indictment No. 15-
 02-0127 and Accusation No. 15-09-0615.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Alicia J. Hubbard, Assistant
 Deputy Public Defender, of counsel and on the
 brief).

 Grace H. Park, Acting Union County Prosecutor,
 attorney for respondent (Milton S. Leibowitz,
 Special Deputy Attorney General/Acting
 Assistant Prosecutor, of counsel and on the
 brief).

PER CURIAM
 Defendant William Rosado appeals from a judgment of the Law

Division finding him in violation of his probation and from the

imposition of a custodial sentence. We affirm.

 By way of background, defendant was indicted for third-degree

aggravated assault, N.J.S.A. 2C:12-1(b)(7), and fourth-degree

theft by unlawful taking, N.J.S.A. 2C:20-3. Thereafter, the State

lodged an accusation charging him with fourth-degree stalking,

N.J.S.A. 2C:12-10(b).

 On September 8, 2015, defendant pled guilty to the theft by

unlawful taking and to the stalking charge. On October 23, 2015,

defendant was sentenced in accordance with the plea agreement to

concurrent eighteen-month periods of probation along with fines

and penalties. The judge also imposed a permanent stalking

restraining order (RO). The RO restrained defendant from any

contact with N.S., including at her residence and place of

employment.

 In November 2015, defendant was charged by the Union County

Probation Department with violating the terms of his probation.

On December 3, 2015, a hearing was conducted before the judge who

imposed the sentence.

 During the hearing, N.S. testified that three days after the

RO was in place, defendant sent her numerous texts. She further

testified that upon returning from a vacation, she observed

 2 A-1887-15T4
defendant outside her residence by a tree. While at that location,

defendant called her cell phone. N.S. spoke to defendant who told

her he loved her and was sorry. She recognized both defendant's

voice and the cell phone number from which the call was placed.

Eventually, N.S. left her residence by car.

 On another occasion, N.S. observed defendant as she entered

the apartment building of a friend she was visiting. Defendant

attempted to follow her, causing N.S. to enter the apartment and

secure the door. She contacted the Woodbridge Police Department,

who responded to the scene, but defendant was not located.

 The judge found N.S. to be credible. In determining that

defendant violated the terms of the RO, the judge held:

 In terms of the house incident in Rahway,
 clearly[,] as I went over the credibility
 factors, this witness made her own personal
 observation. She saw the [d]efendant standing
 across the street by a tree. She was receiving
 phone calls. She saw him making or on his
 phone while her phone was ringing with his
 number coming up across the street.

 . . . .

 . . . She sees him standing there. She sees
 him on the cell phone. She sees her phone
 lighting up with his number on it and she has
 a conversation with him where he starts making
 comments to her.

 Clearly, a communication. Clearly, in
 violation of the restraining order. Clearly,
 it's verbal. And under the circumstances[,]
 it would be the type of communication to cause

 3 A-1887-15T4
annoyance or alarm. In terms of the
Woodbridge incident, I do believe she
personally identified the [d]efendant that
day. It doesn't matter. He knew based on
this restraining order, stay away. You see
her, you go the other way. He didn't.

 He pursued her into a building that she
identified him as trying to get into the door,
which she had just closed and then went into
an apartment to lock herself or secure herself
in the apartment, which was door number two
inside the common entranceway of the building.

 She [saw] him on the outside of the
building. She said candidly he came out of
[nowhere]. Now, I mean we know no one can
come out of [nowhere]. But what does that
mean?

 . . . .

 And she also indicated that she felt
scared and nervous when he was calling her on
the phone. And when she saw him in Woodbridge,
she felt scared. Stalking restraining orders
are a piece of paper. They're intended to
tell someone stay away. That message needs
to be heard. It was a condition of probation.

 And what shocks the conscience of this
[c]ourt is that I issued this order on the
23rd. And somewhere after [October 23], but
on or before November 2[], specifically
October [] 30[], we had incidents with the
[d]efendant violating the order roughly a week
old.

 So I do find by a preponderance of the
evidence that this [d]efendant violated the
conditions of his restraining order, which the
[c]ourt took time to explain to him in open
court when he was being served as how this
applies and what it means, stay away, no

 4 A-1887-15T4
 contact. The [c]ourt couldn't be more clearer
 on that point.

 After hearing from the State, defense counsel, and defendant,

the judge imposed an eighteen-month custodial sentence with a

nine-month period of parole ineligibility on each charge to be

served concurrently. The judge stated the reasons for the

sentence:

 This [c]ourt finds incarceration is
 required to protect the public as this
 [d]efendant fails to accept the privilege of
 probation, defies the law, and defies the
 standard of conditions of probation. His
 adjustment is poor. He violated the order
 within days. And as a result[,] the [c]ourt
 finds that he disregarded the purposes of
 probationary supervision and the goals of a
 probation sentence.

 The [c]ourt finds aggravating factors
 [three, six, and nine]. The [c]ourt finds
 mitigating [ten] no longer applies.
 Accordingly, I'm convinced aggravating's
 [three, six, and nine] outweigh the non-
 existent mitigating's. Mr. Rosado, I note
 your prior record. I find you're no longer a
 good candidate for probation. Your prior
 sentence is vacated.

 And I'm sentencing you as follows.
 You're remanded to the custody of the
 [Department of Corrections] for [eighteen]
 months, with a [nine] month minimum. This
 will run consecutive to your other case as
 they're separate instances. You're discharged
 from probation without improvement. Your
 supervision fee is vacated. All sums will be
 collected through the C.E.U. Now, I do need
 an update on jail credit.

 5 A-1887-15T4
 On appeal, defendant argues that the judge erred in finding

that he violated probation by a preponderance of the evidence and

that the sentence was excessive. We disagree.

 Upon an allegation that a defendant has violated a condition

of probation, the court will not hold a new criminal prosecution

but rather a hearing as "part of the corrections process." State

v. Reyes, 207 N.J. Super. 126, 134 (App. Div.), certif. denied,

103 N.J. 499 (1986); State v. Lavoy, 259 N.J. Super. 594, 600

(App. Div. 1992). Thus, the court need only be satisfied "by a

preponderance of the evidence that defendant has inexcusably

failed to comply with a substantial requirement imposed as a

condition of probation." State v. Jenkins, 299 N.J. Super. 61,

73 (App. Div. 1997) (quoting Reyes, supra, 207 N.J. Super. at

137). N.J.S.A. 2C:45-3(a)(4) authorizes "[t]he court, if

satisfied that the defendant has inexcusably failed to comply with

a substantial requirement imposed as a condition of the order . .

., [to] revoke the . . . probation and sentence . . . the

defendant." Further, "[w]hen the court revokes . . . probation,

it may impose on the defendant any sentence that might have been

imposed originally for the offense of which he was convicted."

N.J.S.A. 2C:45-3(b).

 Our review of a trial judge's fact finding underlying a

violation of probation is "exceedingly narrow." See State v.

 6 A-1887-15T4
Locurto, 157 N.J. 463, 470 (1999); see also State v. Johnson, 42

N.J. 146, 161-62 (1964). We defer to the lower court's findings

of fact, especially those that are substantially influenced by the

trial judge's opportunity to hear and see the witnesses and to

have the sense of the case. State v. Elders, 192 N.J. 224, 244

(2007). Thus, we will not disturb a court's finding of a violation

of probation when supported by sufficient credible evidence in the

record. See Johnson, supra, 42 N.J. at 162.

 Against this backdrop, we reject defendant's contention that

there was insufficient proof to warrant a finding of a violation

of probation. As the judge appropriately noted, within days of

the sentence and issuance of the RO, defendant engaged in conduct

clearly violative of that which was prohibited and placed N.S. in

fear of her safety. This was not the conduct of a person who

intended to abandon the course of conduct that led to his

conviction. Rather, it was indicative by both the conduct itself,

i.e., stalking, and the timing of the conduct, i.e., within days

of the sentence that defendant was not a suitable candidate for

probation.

 Nor do we conclude that the sentence was erroneous. When

imposing a sentence, the court must identify and weigh all of the

relevant aggravating factors counterbalanced with the mitigating

factors supported by credible evidence. State v. Dalziel, 182

 7 A-1887-15T4
N.J. 494, 504-05 (2005). A court shall apply such mitigating

factors as are present in the record or state why such factors are

rejected. State v. Bieniek, 200 N.J. 601, 609 (2010). When a

court imposes a sentence for a violation of probation, the court

must weigh all aggravating and mitigating factors and a violation

of probation is not itself considered to be an aggravating factor.

See State v. Baylass, 114 N.J. 169, 176 (1989). "The only

aggravating factors the court may consider are those that existed

at the time of the initial sentencing." Ibid.

 In imposing sentence, the judge hewed to Baylass by

considering only those aggravating factors that existed at the

time of the initial sentence. Ibid. Further, since the sentence

imposed was one that might have originally been imposed for the

offenses for which defendant was convicted, it was within the

appropriate statutory range. N.J.S.A. 2C:45-3(b).

 Finally, predicated upon our review of the record and in

light of our deferential standard of review, the sentence imposed

does not shock our judicial conscience. State v. O'Donnell, 117

N.J. 210, 215-16 (1989).

 Affirmed.

 8 A-1887-15T4